JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Barbara Holt & Linda Redding, individually and on behalf of all others similarly situated,

**DEFENDANTS**
Paytime Harrisburg, Inc., D/B/A Paytime, Inc. a Pennsylvania Corporation

**(b)** County of Residence of First Listed Plaintiff   Chester County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Mechanicsburg, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joel C. Meredith, Meredith & Narine, 100 S. Broad Street, Suite 905
Philadelphia, PA 19110
215-564-5182

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☒ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Security Breach by Defendants

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   06/26/2014

SIGNATURE OF ATTORNEY OF RECORD
*JC Meredith*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Barbara Holt & Linda Redding, individually and on behalf all others similarly situated, | : : : | CIVIL ACTION |
| v. | : | |
| Paytime Harrisburg, Inc., D/B/A Paytime, Inc. a Pennsylvania Corporation | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)　　　　(✗)

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　　( )

| | | |
|---|---|---|
| _06/26/2014_ | _J C Meredith_ | Barbara Holt & Linda Redding |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-564-5182 | 267-687-1628 | jmeredith@m-npartners.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Barbara Holt, Chester County Pa; Linda Redding, Philadelphia, PA

Address of Defendant: Paytime Harrisburg, Inc., Mechanicsburg, PA

Place of Accident, Incident or Transaction: Mechanicsburg, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☑

Does this case involve multidistrict litigation possibilities?     Yes☐  No☑
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*
I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
Attorney-at-Law    Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.
DATE: June 26, 2014   _____   13188
Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA HOLT and LINDA REDDING, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)    No.<br>)<br>Plaintiff,        )<br>)    **JURY TRIAL DEMANDED**<br>v.           )<br>)<br>PAYTIME HARRISBURG, INC., )<br>D/B/A PAYTIME, INC.,   a    )<br>Pennsylvania corporation,   )<br>)<br>Defendant. |

### CLASS ACTION COMPLAINT

Plaintiffs Barbara Holt and Linda Redding ("Plaintiffs"), by their attorneys, bring this action against Defendant Paytime Harrisburg, Inc., d/b/a Paytime, Inc. ("Defendant" or "Paytime") on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge, as follows:

### NATURE OF THE ACTION

1.      Paytime is a payroll provider delivering a wide range of services – including human resource management solutions, time and attendance systems, and web-based payroll submission – to thousands of businesses employing hundreds of thousands of individuals in all 50 states.

2.      Plaintiff brings this class action against Paytime for its failure to secure and safeguard the personal identifying information ("PII") of Plaintiffs and members of the proposed Class (defined below), including their names, social security numbers, bank account information, dates of birth, hire dates, wage information, home and cell phone numbers, home addresses, and

409036.1

other payroll-related information, as well as the names, social security numbers, and dates of birth of their dependents and beneficiaries.

3.      On May 12, 2014, Paytime began notifying affected clients that their employees' PII had been accessed by intruders (the "Security Breach").  Though Paytime stated that the Security Breach occurred on April 7, 2014, it claimed it did not become aware of the breach until April 30, 2014.

4.      On May 20, 2014, Paytime revealed that an investigation conducted by outside forensic experts had confirmed both that the Security Breach occurred and that employee's PII was actually accessed.[1]  Paytime estimated the number of affected individuals at approximately 216,000.[2]

5.      Paytime's security failures enabled the hackers to steal this extremely sensitive information from within Paytime's system, placing Class members' PII at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Paytime's inadequate security to exploit and injure Class members across the United States.

6.      The Security Breach was caused and enabled by Paytime's knowing violation of its obligations to abide by best practices and industry standards in protecting clients' personal information. Paytime grossly failed to comply with security standards and allowed its clients' financial and identifying information to be compromised.

7.      Paytime failed to disclose the extent of the Security Breach and notify those affected in a timely manner. Paytime failed to take other reasonable steps to clearly and conspicuously inform its clients of the nature and extent of the Security Breach. Furthermore, by

---

[1] *See* "Notice of Data Event" filed with Attorney General of Maryland, May 20, 2014 (attached hereto as **Exhibit A**).
[2] *See, e.g.,* https://www.idradar.com/news-stories/identity-protection/PayTime-Inc-Payroll-Data-Breach-Total-Over-215000-Nationwide (last visited June 13, 2014).

409036.1

failing to provide adequate notice, Paytime prevented Class members from protecting themselves from the Security Breach.

8.     Accordingly, Plaintiffs, on behalf of themselves and other members of the Class, assert claims for breach of implied contract and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, and seek injunctive relief, declaratory relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## PARTIES

9.     Plaintiff Barbara Holt ("Plaintiff Holt") is a citizen of Pennsylvania residing in Chester County, Pennsylvania.  Plaintiff Holt is a former employee of the Shipley School in Bryn Mawr, Pennsylvania, a client of Paytime's services.  Plaintiff Holt signed an enrollment agreement to receive direct deposit of her pay to a bank account with BNY Mellon via Paytime. As a result of her enrollment with Paytime, Plaintiff Holt entered into an express and implied contract with Paytime for the adequate protection of her personal financial and identifying information, and had this sensitive information exposed as a result of Paytime's inadequate security.

10.     Plaintiff Linda Redding ("Plaintiff Redding") is a citizen of Pennsylvania residing in Philadelphia County, Pennsylvania.  Plaintiff Redding is a former employee of the Shipley School in Bryn Mawr, Pennsylvania, a client of Paytime's services.  Plaintiff Redding signed an enrollment agreement to receive direct deposit of her pay to her savings account via Paytime.  As a result of her enrollment with Paytime, Plaintiff Redding entered into an express and implied contract with Paytime for the adequate protection of her personal financial and identifying information, and had this sensitive information exposed as a result of Paytime's inadequate

- 3 -

security. Due to the breach, and in order to safeguard her personal financial and identifying information, Plaintiff Redding closed her savings account, opened a new account, and paid out-of-pocket for a fraud alert to be placed on her credit report.

11.    Paytime is a Pennsylvania corporation with its principal place of business in Mechanicsburg, Pennsylvania. Defendant is a national payroll service bureau doing business in nearly all 50 states and offering a wide array of payroll-related services.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Paytime's State of citizenship.

13.    This Court has personal jurisdiction over Paytime because Paytime is a citizen of Pennsylvania, maintains its headquarters and principal place of business in Pennsylvania, is registered to conduct and conducts business in the State of Pennsylvania, and has significant continuous and pervasive contacts with the State of Pennsylvania.

14.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(1), 1391(b)(2), and 1391(c)(2) as a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and Paytime conducts substantial business in this District.

## FACTUAL ALLEGATIONS

### *The Security Breach*

15.    Plaintiffs bring this class action against Paytime for its failure to secure and safeguard their own and the Class members' personal financial and identifying information,

including social security numbers, bank account information, dates of birth, hire dates, wage information, home and cell phone numbers, home addresses, and other payroll-related information.

16.     Paytime provides payroll services to well over a thousand business and consumer customers throughout the United States, offering:

- Full tax filing (Local EIT and LST);
- W-2's;
- Wage garnishment & 3rd party agency payments;
- Direct deposit;
- New hire reporting;
- Check signing and sealing;
- General ledger reporting, files and interfaces;
- Time and attendance interfaces;
- 401K file generation and submission to providers;
- Paperless payroll;
- Employee self service; and
- Web-based remote pay entry with custom report writer through Payentry.com.

17.     At this time, Paytime has confirmed that approximately 233,000 enrollees in Paytime's services became victims of a data breach when their PII was taken from its Client Service Center during the April 7, 2014 Security Breach.  Paytime has further confirmed that while the majority of the affected individuals reside in Pennsylvania, there are affected individuals in almost all 50 states.

18.     Despite Paytime's knowledge of the breach no later than April 30, 2014, weeks passed before it first notified its employer clients of the possibility that employee information had been accessed during the Security Breach.

- 5 -

19.     Paytime's security failures enabled the perpetrators of the Security Breach to steal financial and identifying information from within Paytime's system and, on information and belief, subsequently appropriate Class members' identities and otherwise put Class members' PII at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Paytime's inadequate security to exploit and injure Class members nationwide.

20.     The Security Breach was caused and enabled by Paytime's knowing violation of its obligations to abide by best practices and industry standards in protecting the personal information of its customers' employees. Because of the extremely sensitive nature of the PII at issue, Paytime had a duty to employ extraordinary measures to ensure that PII was not accessed, compromised, or stolen. However, Paytime grossly failed to comply with security standards and allowed its customers' PII to be compromised.

21.     At this point, Paytime continues to work with investigators to probe the nature and extent of the breach. Nonetheless, banks have received requests from tens of thousands of customers expressing deep concern with their account security as a result of the breach.[3]

22.     Paytime allowed widespread and systematic theft of Class members' financial and identifying information. Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect this information.

23.     To date, Paytime has failed to offer any explanation for the cause of the breach, how the hackers were able to access Plaintiff's and proposed Class members' PII, and what steps, if any, Paytime has taken or will take in the future to ensure that the PII stored in its Client Service Center database will be adequately protected.

---

[3] *See, e.g.,* http://www.witf.org/news/2014/06/paytime-breach-means-extra-work-for-banks.php (last visited June 16, 2014).

409036.1

24.     Plaintiffs and the Class have suffered additional injury in fact and actual damages including: the significant possibility of monetary losses arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts; damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Paytime's wrongful conduct, and damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to monitor their financial and bank accounts, and to ensure their identities are not stolen, as a result of the Security Breach.

***Security Breaches Lead to Identity Theft***

25.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying data to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[4] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating.   In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

26.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve.[5]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[6]

---

[4] *See* http:///www.gao.gov/new.items/d07737.pdf .
[5] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (2012), http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf (last visited June 16, 2014).
[6] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id.*

409036.1

27.    A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

28.    PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[7]  As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers and other PII directly on various Internet websites, making the information publicly available.

***The Monetary Value of Privacy Protections***

29.    At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[8]

---

[7] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html.  *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009).
[8] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited June 16, 2014).

30.     Though Commissioner's Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[9]

31.     The FTC has also recognized that consumer data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[10]

32.     Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And, by making the transaction transparent, consumers will make a profit from the surrender of their PII.[11] This business has created a new market for the sale and purchase of this valuable data.[12]

33.     Consumers place a high value not only on their PII, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy

---

[9] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited June 16, 2014) ("Web's Hot New Commodity: Privacy").
[10] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited June 16, 2014).
[11] *You Want My Personal Data? Reward Me for It*,
http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited June 16, 2014).
[12] *See supra*, fn.9.

information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[13]

34.     When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use – two concerns at issue here – they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[14]

35.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

**Damages Sustained By Plaintiffs and the Class**

36.     Plaintiffs and the Class have suffered injury in fact and actual damages including the significant possibility of monetary losses arising from unauthorized bank account withdrawals, fraudulent payments, and/or related bank fees charged to their accounts.

37.     After the breach, Paytime encouraged enrollees to check their credit reports, place holds on their credit reports, and close any affected accounts.  However, as explained above, fraudulent use of PII might not be apparent for years.  Therefore, customers must expend considerable time taking these precautions for years to come.

38.     Despite this protracted period of potential fraud, Paytime offers affected consumers only one year of credit monitoring. As security blog idradar.com notes:

> Individuals affected by the Paytime breach are being offered 12
> months of access to credit monitoring, identity restoration and
> other services through AllClearID.  One year is a fairly short time

---

[13] Hann et al., *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited June 16, 2014); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).
[14] *Id.*

> frame when a hacker has run off this much key personal data.
> Hackers have been known to sit on data for months before using it.
> ID theft experts suggest that any individual whose SSN was
> compromised needs to be on guard long term to prevent identity
> theft or at least detect it early in the game when damages are more
> manageable.[15]

Paytime's proposed solutions to the potential fraud are, therefore, woefully deficient.

39.     As a result of these activities, Plaintiffs and the Class have suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Paytime's wrongful conduct, particularly given the actual expenditures undertaken in response to this risk, as documented above.

40.     Plaintiffs and the Class have suffered additional damages based on the opportunity cost and value of time that Plaintiffs and the Class have been forced to expend to monitor their financial and bank accounts as a result of the Security Breach.  Such damages also include the cost of obtaining replacement checks, credit and/or debit cards, and bank account numbers.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All persons residing in the United States whose personal
> identifying information was stored in Paytime's Client Service
> Center database as of April 30, 2014 (the "National Class").

Excluded from the National Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

---

[15] https://www.idradar.com/news-stories/identity-protection/PayTime-Inc-Payroll-Data-Breach-Total-Over-215000-Nationwide (last visited June 16, 2014).

42.     Plaintiffs bring Count II, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in one of the Consumer Fraud States[16] whose personal identifying information was stored in Paytime's Client Service Center database as of April 30, 2014 (the "Consumer Fraud Multistate Class").

Excluded from the Consumer Fraud Multistate Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

43.     In the alternative, Plaintiffs bring Count II, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in the State of Pennsylvania whose personal identifying information was stored in Paytime's Client Service Center database as of April 30, 2014 (the "Pennsylvania State Class").

---

[16] The States that have similar consumer fraud laws based on the facts of this case are: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania (73 P.S. § 201-1, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

409036.1

Excluded from the Pennsylvania State Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

44.     The National Class, Consumer Fraud Multistate Class, and Pennsylvania State Class are collectively referred to as the "Class," unless specifically indicated otherwise.

45.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Paytime's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

47.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

> a.   Whether Paytime failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' sensitive financial and identifying information;

- 13 -

b.   Whether Paytime properly implemented its purported security measures to protect customer financial and identifying information from unauthorized capture, dissemination, and misuse;

c.   Whether Paytime's conduct violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

d.   Whether Paytime's conduct constitutes a breach of contract; and

e.   Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

48.   Paytime engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

49.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Paytime's uniform misconduct described above and were thus all subject to the Security Breach alleged herein.   Further, there are no defenses available to Paytime that are unique to Plaintiffs.

50.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this

- 14 -

action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

51.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Paytime, so it would be impracticable for Class members to individually seek redress for Paytime's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
### Breach of Express and ImpliedContract
**(on Behalf of the National Class, the Consumer Fraud Multistate Class or, in the alternative, the Pennsylvania State Class)**

52.     Plaintiffs re-allege and incorporate by reference paragraphs 1-53 as if fully set forth herein.

53.     Paytime required enrollees in Paytime's payroll services to complete enrollment forms providing Paytime with sensitive personal information, including their names, social security numbers, bank account information, dates of birth, hire dates, wage information, home and cell phone numbers, and home addresses. These enrollment forms required Paytime to

- 15 -

safeguard and protect Plaintiffs' and the proposed Class members' financial and identifying information from being compromised or stolen.

54.    Paytime also contracted with the former and current employers of Plaintiffs and the proposed Class members for the purposes of processing payroll and providing human resources management services.  These contracts between Paytime and the former and current employers of Plaintiffs and the proposed Class members required Paytime to safeguard and protect Plaintiffs' and the proposed Class members' financial and identifying information from being compromised or stolen.

55.    Because of these express contractual relationships, Paytime was obligated to protect the personal financial and identifying information of Plaintiffs and members of the Class.

56.    In addition, by providing such financial and identifying information to Paytime, Plaintiffs and the other members of the Class entered into implied contracts with Paytime whereby Paytime became obligated to reasonably safeguard Plaintiffs' and the other Class members' sensitive, non-public information.

57.    Plaintiffs and the other members of the Class would not have entrusted their private and confidential financial and personal information to Paytime in the absence of such contracts, both express and implied, with Paytime.

58.    Paytime breached its contracts with Plaintiffs and the other members of the Class by failing to take reasonable measures to safeguard their financial and identifying information.

59.    As a direct and proximate result of Paytime's breach, Plaintiffs and the other Class members suffered and will continue to suffer damages including but not limited to the loss of their financial information, loss of money and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

409036.1

## COUNT II
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
(and Substantially Similar Laws of the Consumer Fraud States)
(on Behalf of the National Class, the Consumer Fraud Multistate Class or,
in the alternative, the Pennsylvania State Class)

60.    Plaintiffs re-allege and incorporate by reference paragraphs 1-53 as if fully set forth herein.

61.    Paytime represented to its enrollees that Paytime would implement adequate measures to safeguard and protect their financial and identifying information from being compromised or stolen.

62.    Plaintiffs and the other members of the Class were deceived by Paytime's failure to properly implement adequate, commercially reasonable security measures to protect their private financial and identifying information, as represented, while Paytime provided payroll services for them as customers.

63.    Paytime intended for Plaintiffs and the other members of the Class to rely on Paytime to protect the information furnished to it in connection with their payroll services, in such manner that the information would be protected, secure, and not susceptible to access from unauthorized third parties.

64.    Paytime instead handled Plaintiffs' and the other Class members' personal information in such manner that it was compromised.

65.    Paytime failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

66.    It was foreseeable that Paytime's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

67.     Paytime's fraudulent and deceptive acts and omissions were intended to induce Plaintiffs' and the other Class members' reliance on Paytime's deception that their financial information was secure and protected when using Paytime to process their payroll and related information.

68.     Paytime violated 73 P.S. § 201-3 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs' and the other members' private financial and identifying information.

69.     Paytime's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

70.     Paytime's conduct constitutes unfair acts or practices as defined in that statute because Paytime caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

71.     Plaintiffs and the other members have suffered injury in fact and actual damages including lost money and property as a result of Paytime's violations of 73 P.S. § 201-3.

72.     Plaintiffs and the other Class members' injuries were proximately caused by Paytime's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

73.     By this conduct, Paytime violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of Pennsylvania and the Consumer Fraud States whose laws do not materially differ from that of Pennsylvania or conflict with each other for purposes of this action.

409036.1

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in Plaintiffs' favor and against Paytime, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel for the Class;

B.    Ordering Paytime to pay actual damages to Plaintiffs and the other members of the Class;

C.    Ordering Paytime to pay for not less than three years of credit card monitoring services and identity theft protection for Plaintiffs and the other members of the Class;

D.    Ordering Paytime to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

E.    Ordering Paytime to pay statutory damages, as provided by the Pennsylvania Unfair Trade Practices and Consumer Protection Law and other applicable State Consumer Fraud Acts, to Plaintiffs and the other members of the Class;

F.    Ordering Paytime to disseminate individualized notice of the Security Breach to all Class members and to post notice of the Security Breach on its website;

G.    Ordering Paytime to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

H.    Ordering Paytime to pay both pre- and post-judgment interest on any amounts awarded; and

I.    Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims so triable.

409036.1

Dated: June 26, 2014

Respectfully submitted,
Barbara   Holt   and   Linda   Redding,
individually  and  on  behalf  of  all  others
similarly situated

By: _____

Joel Meredith
Krishna Narine
One of the Attorneys for Plaintiff
And the Putative Class
**Meredith & Narine**
100 S. Broad St.
Suite 905
Philadelphia, PA 19110
Tel: (215) 564-5182
Fax: (267) 687-1628
jmeredith@m-npartners.com
knarine@m-npartners.com

Steven Greenfogel
sgreenfogel@litedepalma.com
**Lite DePalma Greenberg, LLC**
1521 Locust Street - 7th Floor
Philadelphia, PA 19102
Tel: 267.519.8306
Fax: 215.569.0958

Katrina Carroll (*pro hac vice*)
kcarroll@litedepalma.com
Kyle A. Shamberg (*pro hac vice*)
kshamberg@litedepalma.com
**LITE DEPALMA GREENBERG, LLC**
Chicago Office
211 West Wacker Drive
Suite 500
Chicago, IL 60606
312.750.1265

Martin E. Grossman
mgrossman@megrossman.com
2121 Greenbrier Drive
Villanova, PA 19085

409036.1